UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

KING WILLIAM COFFEE,

Petitioner,

v.

MICHAEL O'KEEFE,

Respondent.

Civil File No. 01-878 (RHK/FLN)

**REPORT AND RECOMMENDATION**

**THIS MATTER** is before the undersigned United States Magistrate Judge on Petitioner's Application for Habeas Corpus Relief under 28 U.S.C. § 2254. (Docket #. 1.) Respondent has filed a Return contending that the Petition should be denied. (Docket ## 6 & 7.) The matter has been referred to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1(c). The Plaintiff appears *pro se*, and the Respondent appears by John Kirwin, Assistant Hennepin County Attorney. For reasons which follow, this Court recommends that the Petition for Writ of Habeas Corpus be dismissed.

## I. BACKGROUND

Petitioner challenges the constitutionality of his continued civil commitment. The facts giving rise to Petitioner's civil commitment occurred on September 21, 1990, when Petitioner, in an acute psychotic state, drove his vehicle into a group of children standing on a corner, killing a ten-year old girl. (Respondent's Appendix at 8 ("R. at 8").)[1] (Id.) On October 11, 1991, Hennepin County District Court, Judge John M. Stanoch, found that Petitioner had committed Murder in the

[1] Petitioner has suffered from the mental illness paranoid schizophrenia and a number of serious psychotic episodes since at least 1985. (R. at 8-12.)

FILED DEC 05 2001
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD______
DEPUTY CLERK______

Second Degree, but was not guilty by reason of mental illness. (R. at 5.) Judge Stanoch directed the Hennepin County Attorney to file a petition for Petitioner's civil commitment. (Id.) The Hennepin County Attorney, Michael Furhstahl, filed a petition in Hennepin County District Court to commit Petitioner as "mentally ill and dangerous to the public" ("MID"), pursuant to Minn. Stat. § 253B.02, subd. 17b (2001).[2] Following a preliminary hearing on December 12, 1991, the district court issued its Order for Initial Commitment on January 13, 1992, concluding that Petitioner was mentally ill and met the requirements for commitment under the MID law. (R. at 7-17.) He was committed to the Minnesota Security Hospital ("MSH"). (Id.)

Subsequently, Petitioner filed an appeal with the Minnesota Court of Appeals challenging the trial court's initial commitment decision on the grounds that his symptoms have been in remission since his hospitalization and medication. (R. at 22.) The Minnesota Court of Appeals rejected Petitioner's claims and affirmed his initial commitment on June 16, 1992. (See In the Matter of King William Coffee, No. C4-92-394, 1992 WL 130472, at *1-2 (Minn. Ct. App. June 16, 1992). Petitioner was denied Supreme Court review of his initial commitment on August 13, 1998. (R. at 24.)

MSH submitted a treatment report to the district court so that the court could conduct a

---

[2] The commitment statute, Minn. Stat. § 253B.02, subd. 17 defines a person who is "mentally ill and dangerous to the public" as:

> [A] person (a) who is mentally ill; and (b) who as a result of that mental illness presents a clear danger to the safety of others as demonstrated by the facts that (i) the person has engaged in an overt act causing or attempting to cause serious physical harm to another and (ii) there is a substantial likelihood that the person will engage in acts capable of inflicting serious physical harm on another.

review hearing within 90 days of the initial commitment pursuant to Minn. Stat § 253B.18, subd. 2. (R. at 25-28.) On April 21, 1992, the district court conducted said review hearing pursuant to Minn. Stat. § 253B.18, subd. 2. (R. at 29.) On May 15, 1992, the district court concluded that continued commitment was required, and ordered Petitioner's continued commitment for an indeterminate period of time. (R. at 28.)

Following his indeterminate commitment, Petitioner filed another appeal with the Minnesota Court of Appeals. (R. at 30.) On October 6, 1992, the Minnesota Court of Appeals rejected Petitioner's claims and affirmed his indeterminate commitment. (See In the Matter of King William Coffee, No. C4-92-1092, 1992 WL 252383, at *1-2 (Minn. Ct. App. October 6, 1992). Petitioner was denied Supreme Court review of his indeterminate commitment on December 15, 1992. (R. at 31.)

Petitioner's symptoms improved with treatment and medication and he was transferred to the less restrictive Anoka-Metro Regional Treatment Center in December 1995. (R. 78.) Since his indeterminate commitment, Petitioner has petitioned the Minnesota Commissioner of Human Services ("Commissioner") for a Special Review Board hearing on numerous occasions.[3] Sometime

---

[3] The Minnesota Commitment and Treatment Act provides for special criteria for considering petitions for the discharge, provisional discharge or transfer of persons committed as MID. Specifically, the Act provides that:

> The commissioner shall establish one or more panels of a special review board for persons committed as mentally ill and dangerous to the public. The board shall consist of three members experienced in the field of mental illness. One member of each special review board panel shall be a psychiatrist and one member shall be an attorney. No member shall be affiliated with the department of human services. The special review board shall meet at least every six months and at the call of the commissioner. It shall hear and consider all petitions for transfer from a secure treatment facility; all petitions for discharge, provisional discharge, and revocation of provisional discharge; and make recommendations to the commissioner

before March 5 1997, Petitioner requested a full discharge of his civil commitment. (R. at 32.) On April 16, 1997, per the Special Review Board's recommendation, the Commissioner denied Petitioner's petition for full discharge, but granted Petitioner a provisional discharge to reside at the Nancy Page Residence, a structured living facility. (R. at 32.) The provisional discharge contained numerous conditions including that Petitioner: (1) receive follow-up psychiatric services at the Hennepin County Medical Center; (2) take all prescribed medications; (3) cooperate with his assigned County Case Manager; (4) abstain from the use of alcohol and non-prescribed drugs; and (5) that he participate in Weekly Alcoholics Anonymous meetings. (R. at 32-33.)

Sometime before April 16, 1998, Petitioner again petitioned the Commissioner for a full discharge or, in the alternative, to amend the conditions of his provisional discharge. (R. at 36.) On April 30, 1998, the Special Review Board recommended that the Commissioner deny the petition, which the Commissioner did on May 4, 1998. (Id.) Petitioner next petitioned the Supreme Court Judicial Appeal Panel ("Appeal Panel") for reconsideration of the Commissioner's decision.[4] (R. at 43.)

---

> concerning them. Patients may be transferred by the commissioner between secure treatment facilities without a special review board hearing.

See Minn. Stat. § 352B.18, subd. 4c (a). The Commissioner may grant the petition only if the special review board has recommended that it be granted. See Minn. Stat. § 352B.18, subd. 6,7 & 15.

[4] If either party wishes to contest the Commissioner's decision, the statute authorizes either party to then petition a three-judge Judicial Appeal Panel for rehearing and reconsideration of the decision by the Commissioner. See Minn. Stat. § 253B.19, subd. The hearing is de novo and the petitioner has the burden of proof by a preponderance of the evidence. Id.; Linder v. Commissioner of Human Servs., 394 N.W.2d 824, 827 (Minn. Ct. App.1986). The order of the Appeal Panel supersedes the order of the Commissioner. See Minn. Stat. § 253B.19, subd. 3. An aggrieved party may then appeal the panel's decision to the Minnesota Court of Appeals. See Minn. Stat. § 253B.19, subd. 5.

At the hearing before the Appeal Panel, the Court appointed psychological expert , Dr. Reitman, confirmed that Petitioner suffers from paranoid schizophrenia, but that his psychotic symptoms were in remission. (Jan.15, 1999, Hearing Transcript at 77 ("Tr. at 77").) Despite this diagnosis, Dr. Reitman opined "people with this diagnosis, who have had assaultive or homicidal episodes . . . are at high risk to re-offend" and opposed granting Petitioner a full discharge. (Tr. at 77-92.) He recommended instead that Petitioner be provisionally discharged to an independent living situation with ongoing treatment and supervision. (Id.) Petitioner's Case Manager, Thomas Fuller, also testified before the Appeal Panel and opposed granting Petitioner a full discharge. (Fed. 5, 1999, Hearing Transcript at 12-17 ("Tr.2 at 12-15").)

On March 2, 1999, the Appeal Panel upheld the Commissioner's order denying Petitioner a full discharge and found that per Dr. Reitman's recommendations, Petitioner needed an additional period of monitoring in a semi-independent living arrangement before a full discharge could be considered. (R. at 45.) The Appeal Panel declined to address Petitioner's petition to amend the conditions of his provisional discharge until said amendments were reviewed by the Special Review Board.[5] (R. at 47.) Following a hearing on May 5, 1999, the Special Review Board recommended that the Commissioner approve an amended provisional discharge plan allowing Petitioner to live in his own apartment under conditions similar to a structured living facility, which the Commissioner did on May 24, 1999. (R. 48.)

---

[5] While there is little evidence in the record before this Court, it appears that, Petitioner also petitioned the Commissioner for a transfer to Pennsylvania. (R. at 39-40.) However, that request must have been denied by the Special Review Board because on October, 26, 1998, the Appeal Panel issued an Order denying Petitioner's request to be transferred to Pennsylvania, concluding that there was no legal authority for such relief. (R. at 39-40, 42.)

On June 11, 1999, Petitioner appealed the Appeal Panel's decision denying his petitions for a full discharge and a transfer to Pennsylvania to the Minnesota Court of Appeals. (R. at 53-77.) Specifically, Petitioner argued that it was unconstitutional and unreasonable to continue his commitment as a MID since the symptoms underlying the mental illness had abated. (R. at. 65.) On October 5, 1999, the Minnesota Court of Appeals affirmed the denial of his petitions for a full discharge and a transfer to Pennsylvania. (See In the Matter of King William Coffee, No. C4-99-707, 1999 WL 787648, at *1-2 (Minn. Ct. App. October 5, 1999). Specifically, the Minnesota Court of Appeals concluded that there was no constitutional violation because Petitioner's continued commitment bore a reasonable relation to the original purposes for his commitment, including treatment and public safety considerations. (R. at 79.) The Minnesota Supreme Court denied review on December 14, 1999, and the U.S. Supreme Court denied Certiorari on May 22, 2000. (R. at 86, 98.)

On May 21, 2001, Petitioner filed his current application for federal habeas corpus relief under 28 U.S.C. § 2254. The instant petition lists one ground for relief: (1) the continuance of his civil commitment is no longer reasonably related to the purpose for which he was originally committed as MID since his illness has long been in remission. (Docket # 1).

## II. STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") sets forth the standards that govern this Court's review of habeas corpus petitions filed by state prisoners. The relevant portion of the AEDPA, 28 U.S.C. § 2254(d), provides that:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that

> was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

In Williams v. Taylor, 120 S.Ct. 1495, 1518-23 (2000), the United States Supreme Court discussed the meaning of this statute, and how it should be applied by the federal district courts. The Court pointed out that:

> a state-court decision can be 'contrary to' this Court's clearly established precedent in two ways. First, a state-court decision is contrary to this Court's precedent if the state court arrives at a conclusion opposite to that reached by this Court on a question of law. Second, a state-court decision is also contrary to this Court's precedent if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a conclusion opposite to ours.

Id. at 1519 (emphasis added).

> Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Id. at 1523.

The Court further explained that

> A federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable. . . . [A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.

Id. at 1521-22 (emphasis added).

A writ of habeas corpus may also be available where the state courts' resolution of a prisoner's criminal case is "based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d)(2). In other words, habeas relief can be granted if the conviction is based on findings of fact that are not reasonably supported by the evidentiary record. When reviewing a state court decision, however, "a federal court . . . presumes that the state court's factual determinations are correct," and that presumption "may be rebutted only by clear and convincing evidence." Lee v. Gammon, 222 F.3d 441, 442 (8th Cir. 2000).

Accordingly, this Court is not free to conduct its own de novo review of a prisoner's constitutional claims. Habeas relief cannot be granted unless the prisoner has identified, and substantiated, a specific error committed by the state courts. Moreover, he must show that the state courts committed the type of error that is actionable under § 2254(d), as that statute has been interpreted by the Supreme Court in Williams.

## III. DISCUSSION

Petitioner appears to argue that since his illness is in remission, his right to due process is violated by his continued commitment as a MID because it is no longer reasonably related to the purpose for which he was originally committed.[6] The Petitioner's claim is founded upon the Supreme Court's ruling in Jackson v. Indiana, 406 U.S. 715 (1972) (holding that due process requires

[6] A state may deprive a person who is mentally ill and dangerous of his or her liberty by confinement to a mental institution without violating due process until such time as that person is no longer mentally ill or is no longer a danger to himself. See Addington v. Texas, 441 U.S. 418, (1979); Jones v. United States, 463 U.S. 354, 370 (1983). Due process requires "that the nature and duration of commitment bear some reasonable relation to the purpose for which the individual is committed." Jackson v. Indiana, 406 U.S. 715 (1972).

"that the nature and duration of commitment bear some reasonable relation to the purpose for which the individual is committed."); Jones v. United States, 463 U.S. 354, 368 (1983); O'Conner v. Donaldson, 422 U.S. 563, 574-75 (1975) (holding that "[c]onfinement originally founded upon a constitutionally adequate basis cannot constitutionally continue after that basis no longer exists.").[7]

Petitioner's argument is without merit. The discharge procedures pertaining to a person committed as mentally ill and dangerous to the public provide that such a person shall not be discharged unless he or she is: (1) capable of making an acceptable adjustment to open society, (2) no longer dangerous to the public, and (3) no longer in need of inpatient treatment and supervision. See Minn. Stat. § 253B.18, subd. 15.[8] Petitioner's claim was addressed by the Minnesota Court of

---

[7] It is well established that a federal court may not entertain a petition for a writ of habeas corpus on behalf of a state prisoner unless the prisoner has first exhausted all available state court remedies. See 28 U.S.C. § 2254(b); O'Sullivan v. Boerckel, 526 U.S. 838, 841 (1999); Rose v. Lundy, 455 U.S. 509 (1982). This exhaustion of state remedies requirement is based on the principles of comity and federalism; its purpose is to ensure that state courts are given the first opportunity to correct alleged federal constitutional errors raised by state prisoners. See O'Sullivan, 526 U.S. at 841; Duncan v. Henry, 513 U.S. 364, 365-66 (1995); Rose v. Lundy, 455 U.S. at 518-19; Smittie v. Lockhart, 843 F.2d 295, 298 (8th Cir. 1988).

To exhaust his state court remedies, a prisoner must fairly present his constitutional claims to the highest available state court before seeking relief in federal court. See O'Sullivan, 526 U.S. at 841; McCall v. Benson, 114 F.3d 754, 757 (8th Cir. 1997) ("before we may reach the merits of a habeas petition, we must first determine whether the petitioner has fairly presented his federal constitutional claims to the state court"). Furthermore, a habeas petitioner must exhaust his state court remedies with respect to all of the claims that he wishes to raise in a federal habeas corpus petition. A "mixed petition" -- i.e., one that includes both exhausted and unexhausted claims -- will be dismissed for non-exhaustion. See Rose, 455 U.S. at 522.

In this case, the Respondent correctly notes that insofar as Petitioner's claim involves arguments based on the Supreme Court's decision in O'Conner, such arguments were never adjudicated in any state court. Accordingly, this Court will not address any such arguments because they were never addressed by any state court and violate the exhaustion requirement.

[8] Minn. Stat. § 253B.18, subd. 15 provides:

A person who has been found by the committing court to be mentally ill and

Appeals' decision on his direct appeal. Citing Lidberg v. Steffen, 514 N.W.2d 779, 783 (Minn. 1994), the Court of Appeals ruled that based on the testimony of Dr. Reitman and Petitioner's Case Manager, there was clear and convincing evidence supporting the Appeal Panel's decision denying full discharge and that "[b]ecause his continued commitment bears a reasonable relation to the original reasons for his commitment, including treatment and public safety considerations, it is not unconstitutional." See In the Matter of King William Coffee, No. C4-99-707, 1999 WL 787648, at *1-2 (Minn. Ct. App. October 5, 1999).

The Minnesota Appellate Court's citation to Lidberg, which in turn cites Jackson, and Minn. Stat. § 253B.18, subd. 15, clearly demonstrates that the proper legal standard was applied to Petitioner's due process claim. Furthermore, Petitioner has not cited any U.S. Supreme Court decision involving facts that are "materially indistinguishable" from the facts of record here in which a similar claim was upheld. Thus, it cannot be said that the state court decision on Petitioner's claim is "contrary to" established federal law for purposes of § 2254(d)(1). See Pearson v. Probate Court, 309 U.S. 270, 273-75 (1940)(upholding a similar version of the SPP law against a procedural due process challenge).

---

> dangerous to the public shall not be discharged unless it appears to the satisfaction of the commissioner, after a hearing and a favorable recommendation by a majority of the special review board, that the patient is capable of making an acceptable adjustment to open society, is no longer dangerous to the public, and is no longer in need of inpatient treatment and supervision. In determining whether a discharge shall be recommended, the special review board and commissioner shall consider whether specific conditions exist to provide a reasonable degree of protection to the public and to assist the patient in adjusting to the community. If the desired conditions do not exist, the discharge shall not be granted.

Petitioner has also failed to show that the state court's decision involves either (i) an "unreasonable determination of the facts in light of the evidence presented in the state court proceeding," or (ii) an "unreasonable application of clearly established Federal law" to the facts of the case. 28 U.S.C. §§ 2254(d)(1) and (2). The Court of Appeals could not have committed either of these two errors because Dr. Reitman and Petitioner's Case Manger's testimony clearly indicated that Petitioner was still mentally ill and recommended that court-ordered monitoring and supervision continue, noting that Petitioner needs to make further progress in a number of areas to prevent relapse. Additionally, the state court record is replete with proof of Petitioner's "future dangerousness," coupled with the existence of a severe mental disorder that makes it difficult, if not impossible, for Petitioner to control his dangerous behavior. Accordingly, it is clear that Petitioner did not meet the statutory requirements for full discharge.

Petitioner's claim is based on nothing more than conjecture and is contrary to well established case-law. After full review of the facts, this Court finds that the Minnesota Court of Appeals' ruling did not infringe upon a specific constitutional protection. Therefore, Petitioner cannot be granted habeas corpus relief on his due process claim.

## III. RECOMMENDATION

Based on the foregoing, and all the files, records and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Petitioner's Application for a Writ of Habeas Corpus, (Docket No. 1), be **DISMISSED WITH PREJUDICE**.

DATED: December 5, 2001

Franklin L. Noel
FRANKLIN L. NOEL
Chief Magistrate Judge

Pursuant to Local Rule 72.1(c)(2), any party may object to this report and recommendation by filing with the Clerk of Court and serving all parties, within ten days after being served with a copy thereof, written objections which specifically identify the portions of the proposed findings, recommendations or report to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief with ten days after service thereof. All briefs filed under this rule shall be limited to ten pages. A judge shall make a de novo determination of those portions to which objection is made.

This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.